IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

COLLEEN JUMBA BAKER, *et al*,

*Plaintiffs*,

v.

CITY OF PITTSBURGH, *et al*,

*Defendants*.

Civil Action No. 2:24-cv-461

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiffs, Colleen Jumba Baker, Brittany Mercer, Matthew O'Brien, Jonathan Sharp, Matthew Zuccher, Christopher Sedlak, and Devlyn Valencic Keller (collectively "Plaintiffs"), brought this action against the City of Pittsburgh ("the City"), Larry Scirotto ("Scirotto"), Lee Schmidt ("Schmidt"), and Matthew Lackner ("Lackner") (collectively "Defendants"). (ECF No. 21). At Count I of Plaintiffs' Amended Complaint, Plaintiffs allege that Defendants violated the Wiretapping and Electronic Surveillance Control Act ("WESCA") and Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("federal Wiretap Act"). (*Id.* ¶¶ 34-44). At Count II, Plaintiffs allege that Defendants violated 42 U.S.C. § 1983 through the impingement of Plaintiffs' statutory rights under the wiretap statutes as well as Plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments. (*Id.* ¶¶ 45-56). Lackner filed a motion to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), (ECF No. 26), and a supporting brief, (ECF No. 27). Likewise, the City, Scirotto, and Schmidt filed a motion to dismiss Plaintiffs' claims, (ECF No. 32), and a supporting brief, (ECF No. 33). For the reasons articulated

below, the Court will grant the City, Scirotto, and Schmidt's motion. The Court will grant in part and deny in part Lackner's motion. Specifically, the Court dismisses the Count II § 1983 official capacity claims against Lackner, and the Count I statutory wiretap claims against Lackner in relation to the alleged recording that occurred in Lackner's office between Lackner and Plaintiff Christopher Sedlak ("Sedlak") on September 27, 2023. The rest of Plaintiffs' claims against Lackner survive Lackner's motion to dismiss.

## I.    FACTUAL BACKGROUND

Plaintiffs are police officers employed by the City of Pittsburgh Bureau of Police ("PBP") assigned to Zone 2. (ECF No. 21, ¶¶ 25-26). Defendants are the City of Pittsburgh, Chief of Police Larry Scirotto, Director of Public Safety Lee Schmidt, and former Zone 2 Commander Matthew Lackner. (*Id.* ¶¶ 19-23). In the early fall of 2023, Lackner was the highest-ranking police officer stationed in Zone 2. (*Id.* ¶ 23). Plaintiffs allege that from September 27, 2023, through October 4, 2023, Lackner utilized body worn cameras ("BWCs"), owned by the City, to record their private conversations. (*Id.* ¶ 28). With one exception, all of the surveillance allegedly occurred in unmarked police vehicles where Lackner was not present. One recording allegedly occurred in Lackner's office where Lackner was a direct party to the conversation. (ECF No. 21-1, p. 6).[1] Lackner allegedly made eleven separate recordings totaling approximately seventy-five hours of footage. (*Id.* at 5). Plaintiffs further allege that Lackner used the global positioning system ("GPS") component of the BWCs to track Plaintiffs' locations. (ECF No. 21, ¶ 28). Plaintiffs were allegedly unaware that Lackner was utilizing the BWCs to surveil their conversations and locations. (*Id.* ¶ 30). Plaintiffs did not consent to such surveillance. (*Id.* ¶¶

---

[1] In deciding a motion to dismiss, courts may consider exhibits attached to the complaint. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

31-32). On October 5, 2023, when Lackner was confronted regarding his BWC surveillance, Lackner allegedly claimed that he was a part of a confidential federal investigation into one of the detectives. (ECF No. 21-1, p. 11). Lackner instructed PBP officers not to communicate with anyone else regarding the purported federal investigation. (*Id.*). The federal investigation did not exist. (*Id.*). Later that day, Lackner was placed on administrative leave, effective immediately. (*Id.*). As a result of his actions, Lackner was charged by the Commonwealth of Pennsylvania with four counts of Illegal Use of Wire or Oral Communications in violation of 18 Pa. C.S. § 5703(1). (ECF No. 21, ¶ 37). Lackner subsequently entered the Allegheny County Accelerated Rehabilitative Disposition Program ("ARD") in relation to his criminal charges. (*Id.* ¶ 38). Defendants moved to dismiss both counts of Plaintiffs' Amended Complaint under Rules 12(b)(1) and 12(b)(6). (ECF No. 27); (ECF No. 33).

## II.    STANDARD OF REVIEW

### A.  <u>Rule 12(b)(1)</u>

Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a court must grant a motion to dismiss if there is a lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). A plaintiff bears the burden of persuasion that federal jurisdiction is present. *Saint Vincent Health Ctr. v. Shalala*, 937 F. Supp. 496, 501 (W.D. Pa. 1995) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). The threshold to survive a motion to dismiss under Rule 12(b)(1) is lower than that under Rule 12(b)(6). *Lunderstadt v. Colafella*, 886 F.2d 66, 70 (3d Cir. 1989). This is because dismissal for lack of jurisdiction cannot be predicated on the mere probability that a plaintiff's legal theories are false; a court will only dismiss for a lack of jurisdiction if a plaintiff's legal theories 1) are solely proffered to obtain federal jurisdiction but otherwise are immaterial, or 2) are "insubstantial on their face." *Growth Horizons, Inc. v. Del. Cnty., Pa.*, 983 F.2d 1277, 1280

(3d Cir. 1993) (quoting *Bell v. Hood*, 327 U.S. 678, 773, 776 (1946)).  "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  A court lacks jurisdiction if a plaintiff cannot establish Article III standing.  *See Davis*, 824 F.3d at 346 ("Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed.").

## B. Rule 12(b)(6)

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff.  *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555.  Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable

inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

### III.    ANALYSIS

The Court begins by noting that Plaintiffs' Amended Complaint does the bare minimum to comply with the requirements of Federal Rule of Civil Procedure 8 ("Rule 8"). Under Rule 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Rule 8(d)(1) provides that each allegation in a pleading "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1). The purpose of Rule 8 is to prevent complaints that are ambiguous or vague so as to impede the defendant's ability to form a responsive pleading. *See Schaedler v. Reading Eagle Publications, Inc.*, 370 F.2d 795, 798 (3d. Cir. 1967). While the pleading requirements of Rule 8 are liberally construed, courts have consistently held that disorganized and highly repetitive complaints fail to satisfy Rule 8. *See Parker v. Learn the Skills Corp.*, No. 03–6936, 2004 WL 2384993, at *2 (E.D. Pa. October 25, 2004) (stating that while excessive length alone is not a sufficient reason to dismiss a complaint, when accompanied by a lack of clarity, a dismissal is proper); *Burton v. Peartree*, 326 F. Supp. 755, 758–59 (E.D. Pa. 1971) (holding that "a lengthy rambling complaint which contains little more than demands, charges and conclusions . . . is not a short and plain statement of the case and flagrantly violates" Rule 8). Liberally construing the requirements of Rule 8, the Court will not dismiss Plaintiffs' Amended Complaint in its entirety. However, the Court notes that the Amended Complaint is far from the model of clarity. It is disorganized, lacks detail, and is generally unartfully pled. The Court should not be forced to engage in mental gymnastics to discern

Plaintiffs' claims.  In the Court's estimation, at Count I, Plaintiffs allege that Defendants violated WESCA and the federal Wiretap Act by engaging in unauthorized interception of Plaintiffs' oral communications.  (ECF No. 21, ¶¶ 34-44).  Plaintiffs allege that the City, Scirotto, and Schmidt are vicariously liable for the acts of Lackner, their representative.  (*Id.* ¶¶ 43-44).  At Count II, Plaintiffs allege that Defendants violated 42 U.S.C. § 1983 by violating Plaintiffs' Fourth and Fourteenth Amendment rights under the United States Constitution as well as the wiretap statutes. (*Id.* ¶¶ 45-56).

### A.  Count One – Statutory Claims under WESCA and the Federal Wiretap Act

#### 1.  Article III Standing

##### i.  *Injury in Fact*

Defendants contend that Plaintiffs do not have Article III standing to bring their claims under the federal Wiretap Act and WESCA because Plaintiffs did not plead that they suffered any concrete injury.  (ECF No. 27, pp. 25-26); (ECF No. 33, pp. 5-9).  More specifically, Defendants assert that *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) and *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) direct the Court to hold that Plaintiffs did not suffer an injury in fact because Plaintiffs did not allege that the electronic interceptions revealed private information, caused Plaintiffs economic harm, or affected any other part of Plaintiffs' lives.  (*Id.*).  According to Defendants, Lackner's alleged surreptitious interception of Plaintiffs' private conversations did not constitute a concrete harm as required by Article III.  (*Id.*).  Plaintiffs respond that they suffered an injury sufficient to confer Article III standing since, in addition to the wiretap violations, their Fourth and Fourteenth Amendment rights were allegedly violated, and Plaintiffs were "victims of bad acts." (ECF No. 35, pp. 16-18).  The Court holds that Plaintiffs have adequately alleged that they suffered an injury in fact sufficient to establish Article III standing at this early stage of the proceedings.

Article III standing is conferred when a plaintiff has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 478 (3d Cir. 2018). The plaintiff bears the burden of showing the required elements. *Id.* (internal citations omitted). The parties primarily dispute the first element of standing –whether Plaintiffs have suffered an injury in fact. More specifically, the parties dispute whether Plaintiffs suffered a concrete harm. Defendants argue that merely being the victim of a statutory wiretap violation is not a concrete harm under *Spokeo*. (ECF No. 33, p. 7).

"The primary element of standing is injury in fact, and it is actually a conglomerate of three components." *Mielo*, 897 F.3d at 478 (internal citations omitted). An injury in fact is shown when a plaintiff establishes that he or she suffered an invasion of a legally protected interest. *Id.* When evaluating whether a plaintiff has suffered an invasion of a legally protected interest, the court must separate its standing inquiry from any evaluation of the merits of the claim. *Id.* at 478–79. Additionally, the injury must be concrete and particularized, and actual or imminent—not merely conjectural or hypothetical. *Id.*

In *Spokeo*, the Supreme Court of the United States explained that "Congress'[s] role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341. In evaluating whether a harm qualifies as an injury in fact, *Spokeo* guides federal courts to inquire whether "an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* *Spokeo* also directs federal courts to look at Congress's judgment, as it has the power to "elevat[e] to the status of legally

cognizable injuries concrete, de facto injuries that were previously inadequate in law." *Id.* (quoting *Lujan*, 504 U.S. at 578) (internal quotation marks omitted).

Later, in *TransUnion,* the Supreme Court reinforced the notion that, although harder to discern, intangible harms can qualify as concrete injuries under Article III, especially ones traditionally recognized, such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion*, 594 U.S. at 425. The Court also emphasized that Congress may not enact an injury into existence that otherwise would not exist. *Id.* at 426. While "Congress's views may be instructive," *TransUnion* bolstered the *Spokeo* principle that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* In evaluating standing, the Supreme Court did not create such a high bar to Article III that it precludes causes of action for statutory violations where harm is clearly defined by statute and conceptually analogous to recognized harms. *TransUnion* instructs federal courts to filter out litigants who allege intangible harms derived from bare procedural violations that are not "remotely harmful" in a traditional sense. In the Court's view, neither *TransUnion* nor *Spokeo* prevents Congress from legislating enforceable statutory rights where the nature of the harm is akin to one traditionally recognized by the law. Plaintiffs' cause of action is clearly defined by WESCA and the federal Wiretap Act. Thus, the issue in this case is whether having a private conversation surreptitiously recorded is conceptually analogous to a recognized harm.

"Privacy torts have become 'well-ensconced in the fabric of American law.'" *In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) (quoting *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 638 (3d Cir. 2017)). One variation of invasion of privacy is intrusion upon seclusion. At common law, intrusion upon seclusion generally requires a plaintiff to show that the defendant intentionally intruded "upon the

solitude or seclusion of another or his private affairs or concerns," and that such intrusion "would be highly offensive to a reasonable person." *Farst v. AutoZone, Inc.*, 700 F. Supp. 3d 222, 229 (M.D. Pa. 2023). Of particular relevance to the instant case, the Second Restatement of Torts recognizes that intrusion upon seclusion may occur through "use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by . . . tapping his telephone wires." RESTATEMENT (SECOND) OF TORTS § 652B cmt. b (AM. L. INST. 1977).[2] The common law tort of intrusion upon seclusion, the federal Wiretap Act, and WESCA address the same underlying interest: keeping one's private conversations private. As alleged, Lackner surreptitiously recorded around seventy-five hours of Plaintiffs' conversations without Plaintiffs' knowledge or consent. Plaintiffs contend that this intrusion violated their expectation of privacy, albeit in the workplace, in a manner that could be highly offensive to a reasonable person. Plaintiffs' have alleged a harm to their privacy interests.

Defendants contend that Plaintiffs' alleged harm cannot be concrete because none of the information was highly sensitive or resulted in adverse consequences to Plaintiffs. (ECF No. 27, pp. 25-26); (ECF No. 33, pp. 5-9). But intrusion upon seclusion does not require public disclosure of private information or adverse consequences to the person whose right to privacy was invaded. Therefore, at this early stage of the proceedings, Plaintiffs have adequately alleged that they suffered a harm with a close relationship to intrusion upon seclusion, a harm associated with the historically recognized right to privacy.

---

[2] It is not necessary for a plaintiff asserting a claim to plead the elements of a traditional cause of action. *Petris v. Sportsman's Warehouse, Inc.*, No. 2:23-CV-1867, 2024 WL 2817530, at *6 (W.D. Pa. June 3, 2024). It is only necessary that an analogous harm exists. *Id.*

### ii.  Causation

The City, Scirotto, and Schmidt further argue that there is "a break in the chain of causation between the Plaintiffs' injuries and the City Defendants." (ECF No. 38, p. 4).  They argue that since Plaintiffs failed to plead that Plaintiffs' injuries are traceable to the City, Scirotto, and Schmidt's conduct, Plaintiffs have not plausibly alleged the causation element of standing. (*Id.* at 4-5).  The Court agrees and holds that Plaintiffs have not established standing with respect to the City, Scirotto, and Schmidt in relation to Count I of the Amended Complaint.

As discussed above, the "irreducible constitutional minimum" of Article III standing consists of three elements – all of which must be met for a plaintiff to establish standing. *Toll Bros. v. Twp. of Readington,* 555 F.3d 131, 137-38 (3d Cir. 2009).  The second requirement for Article III standing is "traceability." *Id.* at 142 (internal citations omitted).  "If the injury-in-fact prong focuses on whether the plaintiff suffered harm, then the traceability prong focuses on who inflicted that harm.  The plaintiff must establish that the defendant's challenged actions, and not the actions of some third party, caused the plaintiff's injury." *Id.*  This causal connection need not be as close as the proximate causation needed to succeed on the merits of a tort claim. *Pub. Interest Research Group of N.J., Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 72 (3d Cir. 1990).  Rather, "an indirect causal relationship will suffice," so long as there is "a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant." *Toll Bros.*, 555 F.3d at 142 (internal citations omitted).

In Count I, Plaintiffs plausibly allege that they suffered an injury in fact that was fairly traceable to Lackner's conduct.  However, they did not allege that the City, Scirotto, or Schmidt took direct action to violate WESCA or the federal Wiretap Act.  Instead, Plaintiffs argue that the City, Scirotto, and Schmidt are liable for Lackner's misconduct through a theory of vicarious

liability.  (*See* ECF No. 21, ¶ 43 ("Based upon the agency relationship, City of Pittsburgh, Larry Scirotto, Lee Schmidt and Matthew Lackner are vicariously liable for the acts and/or admissions of its representatives.").

Assuming for the sake of this analysis that municipalities and government employees can be vicariously liable for violations of WESCA and the federal Wiretap Act, Plaintiffs failed to plausibly allege and plead theory.  "It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees *in the scope of their authority or employment*."  *Meyer v. Holley*, 537 U.S. 280, 285 (2003) (emphasis added).  Plaintiffs did not plead any facts showing that Lackner's acts were within the scope of his employment.  Lackner's actions violated the City's BWC policy.  PBP's BWC policy states that (1) "Members shall not use BWC equipment unless acting in the performance of their official duties," (2) "Members shall not intentionally obscure the view of their BWC," (3) "[t]he BWC shall not be utilized off-body as a surveillance tool," and (4) Member[s] shall inform all individuals identifiably present as soon as reasonably practical, that their oral/video communications will or have been intercepted and recorded."  (ECF No. 32-1, p. 3).   Plaintiffs allege that Lackner hid BWCs in unmarked patrol vehicles without their knowledge to surreptitiously record their private conversations.  These alleged actions are in direct violation of the above-mentioned provisions of PBP's BWC policies.  The Court may consider PBP's BWC policy, even though it is extraneous to the complaint, because Plaintiffs explicitly relied on the policy in their Amended Complaint.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (stating that a district court may consider a document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document).  Plaintiffs have not alleged that Lackner created the recordings in the performance of his official duties.  Further, Plaintiffs have

11

not pled any facts showing that the City directed or expected Lackner to perform surreptitious surveillance of his employees, nor is there any allegation that the recordings were actuated with the intent to serve the City. Plaintiffs' conclusory statements are not sufficient to plausibly allege that the City, Scirotto, and Schmidt caused Plaintiffs' injuries–either directly or through a theory of vicarious liability. Thus, Plaintiffs failed to properly plead the second element of standing, traceability, in relation to these Defendants. Since Plaintiffs cannot establish standing with respect to the City, Scirotto, and Schmidt in relation to Count I, Count I is dismissed with prejudice as asserted against these Defendants.[3] Count I will only proceed as to Lackner.

2. The Direct Party Consent Exception Under the Federal Wiretap Act

Lackner argues that he did not violate the federal Wiretap Act when he allegedly used his BWC to record a conversation in his office between himself and Sedlak on September 27, 2023, because of the federal Wiretap Act's direct party exception. (ECF No. 27, p. 27). The Court agrees

---

[3] The Court will dismiss Count I as asserted against the City, Scirotto, and Schmidt with prejudice because any amendment by Plaintiffs would be futile in the eyes of the Court. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (holding that a court may deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility). "An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." 3 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 15.15 (3d ed. 2021). Based upon the facts previously pled by Plaintiffs in their first complaint, (ECF No. 1), and the allegations contained in the Amended Complaint (ECF No. 21); (ECF No. 21-1), there is no possible factual basis sufficient to establish "a fairly traceable connection between the alleged injury in fact and the alleged conduct" of the City, Scirotto, and Schmidt. *See Toll Bros.*, 555 F.3d at 142 (internal citations omitted). Thus, any amendment would once again fail to establish standing with respect to the City, Scirotto, and Schmidt in relation to Count I of the Amended Complaint.

with Lackner and dismisses any portion of Count I under the federal Wiretap Act against Lackner that relates to the in-office conversation between Lackner and Sedlak.[4]

Section 2511 of the federal Wiretap Act prohibits individuals from intentionally intercepting any wire, oral, or electronic communication. 18 U.S.C. § 2511; *Bartnicki v. Vopper*, 532 U.S. 514, 523 (2001). Any individual whose communication is "intercepted, disclosed, or intentionally used" can bring a civil action for injunctive relief and monetary damages. 18 U.S.C. § 2520; *Kwok Sze v. Pui-Ling Pang*, 529 F. App'x 196, 199 (3d Cir. 2013). A plaintiff pleads a prima facie case under the federal Wiretap Act by alleging that the defendant: "(1) intentionally (2) intercepted, endeavored to intercept, or procured another person to intercept (3) the contents of (4) any wire, electronic, or oral communication, (5) using a device." *Vasko v. Twyford*, No. CV 16-197, 2016 WL 3522038, at *3 (W.D. Pa. June 28, 2016) (citing *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) (internal citations omitted)).

Plaintiffs allege that one of the eleven recordings at issue occurred in Lackner's office when Lackner recorded a conversation between himself and Sedlak. (ECF No. 21-1, p. 6). Lackner argues that he is not liable under the federal Wiretap Act for this alleged recording because he was a direct party to the conversation. (ECF No. 36, pp. 27-28).

One-party consent is a viable defense under the federal Wiretap Act. Under 18 U.S.C. § 2511(2)(c), "[i]t shall not be unlawful [] for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(c). In other words, the federal Wiretap Act is not violated if the interceptor, acting under

---

[4] Lackner also argued that Sedlak did not have a reasonable expectation of privacy in this conversation. (ECF No. 27, pp. 22-24). The Court addresses this below in section C dealing with Plaintiffs' reasonable expectation of privacy in the recorded conversations.

the color of law, is a party to the communication.  Here, Plaintiffs alleged that "[a]t all times material hereto," Lackner was "acting under the color of state law."[5]  (ECF No. 21, ¶ 22).  Further, 18 U.S.C. § 2511(2)(d) states that:

> It shall not be unlawful for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d).  Whereas a person acting under color of law is always entitled to invoke one-party consent as a defense, that defense does not apply if a person not acting under color of law intercepts a communication "for the purpose of committing any criminal or tortious act."  18 U.S.C. § 2511(2)(d).  Plaintiffs did not plead any allegations or facts indicating that Lackner intercepted the recorded conversations for the purpose of committing any criminal or tortious acts.[6]  Thus, there is no reason for the Court to analyze whether Lackner was acting under the color of law for the purposes of the federal Wiretap Act.

In connection to the recording in Lackner's office, Plaintiffs fail to plead a plausible claim for relief under the federal Wiretap Act.  Lackner was a party to the conversation between himself and Sedlak.  As set forth above, the federal Wiretap Act is not violated when one party to the conversation consents to the interception.  Lackner consented to the interception when he recorded the conversation.  Thus, the Court will grant Lackner's motion to dismiss Plaintiffs' federal

---

[5] At this time, Lackner does not dispute that he was acting under the color of law when he allegedly made the surreptitious recordings.  Thus, the Court expresses no view on this issue.

[6] For the exception to apply, the criminal or tortious act must be something other than the allegedly unlawful interception.  *Nickelodeon*, 827 F.3d at 276 (recognizing that the "tortious act" exception only applies "when the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording").

Wiretap Act claim related to the alleged recording that occurred in Lackner's office on September 27, 2023.[7]  The direct party exception applies to this specific recording.

## B.  Count Two – 42 U.S.C. § 1983

### 1.  Official Capacity Claims Against Lackner

Plaintiffs sued Lackner in his official and individual capacity under § 1983.  (ECF No. 21, ¶ 22).  Lackner contends that the claims against him in his official capacity should be dismissed as redundant.[8]

When a government entity receives notice and an opportunity to respond, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Based on this holding, several courts in the Western and Middle Districts of Pennsylvania have dismissed official capacity § 1983 claims against government officials when they repeated claims against the government entity.  *See Snatchko v. Peters Twp.*, No. 2:12–1179, 2012 WL 6761369, at *11 (W.D. Pa. Dec. 28, 2012) (granting defendant's motion to dismiss because "[s]uch a suit is properly treated as a suit against the entity"); *Taylor v. Pilewski*, No. 08–611, 2008 WL 4861446, at *2 (W.D. Pa. Nov. 7, 2008) (dismissing claims against a prison warden in his official capacity because they were "redundant

---

[7] There is no direct party exception under WESCA.  *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 128 (3d Cir. 2022).  Thus, Plaintiffs' WESCA claim in relation to this recording is not affected by Lackner's consent or presence.

[8] Lackner raised the argument regarding Plaintiffs' Count II official capacity claims in his brief in support of his motion to dismiss.  (ECF No. 27, p. 21).  Plaintiffs did not address this argument in their brief in opposition to Lackner's motion to dismiss.  (ECF No. 35).  Nor did Plaintiffs attempt to defend the Count II official capacity claims against Lackner in any other manner.  The Court chose to analyze the Count II official capacity claims asserted against Lackner but notes that the Court could have treated these claims as abandoned because Plaintiffs failed to address Lackner's motion to dismiss.  *See Lisowski v. Walmart Stores, Inc.*, 552 F. Supp. 3d 519, 526 n.4 (W.D. Pa. 2021) (stating that failure to respond to an argument advanced in support of a motion to dismiss results in a waiver of the claim sought to be dismissed).

of the claims against the county"). Courts are not required to dismiss official capacity claims that are redundant of claims against a government entity. However, a court may exercise its discretion to dismiss official capacity claims that "unnecessarily clutter the case" and "are likely to be confusing to a jury." *Hordych v. Borough of N. E.*, No. 10-16E, 2010 WL 1707735, at *8 (W.D. Pa. Apr. 27, 2010); *see also Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962) (stating that courts have inherent authority to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases"). Since Plaintiffs' redundant claims against Lackner unnecessarily clutter the case, and Plaintiffs did not attempt to refute Lackner's argument against the claims, the Court will exercise its discretion and dismiss the official capacity § 1983 claims against Lackner in Count II.

2.   Fourteenth Amendment Claims

Lackner argues that Plaintiffs' Fourteenth Amendment claims in Count II against him must be dismissed because the Fourth Amendment is the explicit source of protection for the constitutional rights he allegedly violated. (ECF No. 27, pp. 11, 23). The Court concludes that the Fourteenth Amendment related aspects of Count II will go forward to the extent explained below.

"Section 1983 does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (internal citations omitted). To establish a claim under § 1983, the plaintiff must show that a person acting under color of law violated a right secured by the Constitution or laws of the United States. *Id.* When a constitutional claim is covered by a specific constitutional provision, the claim is analyzed under the specific provision,

not under Fourteenth Amendment substantive due process. *Graham v. Connor*, 490 U.S. 386, 395 (1989).

The Fourth Amendment states: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall be not violated . . . ." U.S. CONST. amend. 4. The Fourth Amendment's protection extends beyond the sphere of criminal investigations. *Camara v. Mun. Court of City and County of San Francisco*, 387 U.S. 523, 530 (1967). "The Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government," regardless of whether the government actor is investigating crime or performing another function. *Skinner v. Railway Lab. Executives' Assn.*, 489 U.S. 602, 613–14 (1989). Moreover, "[t]he Fourth Amendment applies [] when the Government acts in its capacity as an employer." *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 756 (2010) (citing *Treasury Employees v. Von Raab*, 489 U.S. 656, 665 (1989)).

Plaintiffs are alleging that Lackner, under the color of law, invaded their privacy by surreptitiously recording their conversations without a valid warrant or exception to the warrant requirement. Plaintiffs' claims of illegal wiretapping in Count II should be analyzed under the Fourth Amendment. The Fourth Amendment applies to the states through the Fourteenth Amendment's due process clause. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961). To the extent that Plaintiffs invoke the Fourteenth Amendment's due process clause as the provision which makes the Fourth Amendment applicable to the states, they are correct. In this context, the Fourteenth Amendment provides no different protections to Plaintiffs than those provided by the Fourth Amendment. *Id.* Because Plaintiffs' Fourteenth Amendment claims are at least proper in the sense discussed above, the Court denies Lackner's motion to dismiss Plaintiffs' Fourteenth Amendment claims in Count II. Nevertheless, the Court notes that the Fourth Amendment is the

explicit source of the constitutional rights that Lackner allegedly violated. Thus, the Fourteenth Amendment is *only* applicable to the extent that it applies the Fourth Amendment to the states. There are no substantive Fourteenth Amendment due process claims at issue.

### 3. Claims Against the City, Scirotto, and Schmidt

The City, Scirotto, and Schmidt argue that the Court must dismiss Plaintiffs' § 1983 claims against them because (1) Plaintiffs' general allegations of wrongdoing fail to support policy or custom *Monell* claims; (2) Plaintiffs failed to identify a municipal policymaker that created a policy or custom that allegedly violated their constitutional rights; (3) Lackner is not a policy maker for purposes of a *Monell* claim; and (4) Scirotto and Schmidt did not create a policy or custom that violated Plaintiffs' constitutional rights. (ECF No. 33, pp. 13-20). Plaintiffs counter that the PBP "had a policy authorizing and mandating the use of body worn cameras the purpose of which was to provide police officers a means to record events, and, after the fact, afford authorized individuals the opportunity to view events as recorded." (ECF No. 37, p. 16). Plaintiffs allege that this policy "lacked effective procedures to train, monitor, or oversee Matthew Lackner's conduct towards Plaintiffs." (*Id.* at 17). Thus, Plaintiffs argue that their complaint "allege[s] municipal liability under the applicable standards." (*Id.* at 19). The Court holds that Plaintiffs' § 1983 claims, as pled against the City, Scirotto, and Schmidt, are improper and misplaced respondeat superior claims. Thus, the Court will grant the City, Scirotto, and Schmidt's motion to dismiss Count II as asserted against them.

Municipal liability under § 1983 may not be proven under a respondeat superior theory of liability but must be founded on evidence that the government itself supported a violation of constitutional rights. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Municipal liability exists only when execution of the municipality's policy or custom inflicts the

injury. *Id.* at 694. Not all state action rises to the level of a custom or policy. A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy, or edict." *Kneipp*, 95 F.3d at 1212 (internal citations omitted). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997). When a plaintiff brings a complaint against a municipality – commonly known as a "*Monell* claim" –the offending custom, policy, or practice must be pled specifically in the complaint. *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) ("To satisfy the pleading standard, [the plaintiff] must identify a custom or policy and specify what exactly that custom or policy was.") (internal citations omitted). Factual allegations must give notice not only "as to the alleged wrongdoing of the individual police officers," but also "as to the alleged policy and custom of the municipality at issue." *Muller v. Bristol Twp.*, No. 09-1086, 2009 WL 3028949, at \*4 (E.D. Pa. Sept. 17, 2009).

Once a plaintiff has pled that a specific policy or custom exists, he must then plausibly allege that the unconstitutional conduct causally results from that policy or custom. There are three situations where the acts of a government employee may be deemed to result from a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." *Bryan County*, 520 U.S. at 417. The second occurs where "no rule has been announced as policy, but federal law has been violated by an act of the policymaker itself." *Id.* Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious,

and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" *Id.* at 417–18 (internal citations omitted). Thus, for a plaintiff to sufficiently allege municipal liability under § 1983, he must plead facts to support a finding that a specific policy or custom caused the alleged harm.

Count II of Plaintiffs' Amended Complaint contains extraordinarily bare allegations. (*See* ECF No. 21, ¶¶ 45-56). Plaintiffs allege that the City, Scirotto, Schmidt, and Lackner were decisionmakers and policymakers "who established policies, procedures, customs, and/or practices" acting under the color of law. (*Id.* ¶¶ 46-48, 51). Plaintiffs further allege that the City "had a policy authorizing and mandating" the use of BWCs and that Defendants were responsible for having policies in place to "ensure that misconduct occurring within [PBP] regarding the use of body worn camera[s] was identified, properly investigated, and appropriate action was taken to protect the rights of individuals." (*Id.* ¶¶ 49-50). Finally, Plaintiffs allege:

> 52. At all times material hereto, the City of Pittsburgh City of Pittsburgh, Larry Scirotto, and Lee Schmidt was or should have been aware that Matthew Lackner utilized body worn cameras to video and audio record Plaintiffs along with utilizing the GPS component of the body worn camera to track them without authorization and the Plaintiffs' consent.
> 53. The City of Pittsburgh's policies, procedures, customs and practices, or lack thereof, were maintained in deliberate indifference to action taken by their subordinates.
> 54. The City of Pittsburgh's policies, procedures, customs and practices, or lack thereof, were a direct and proximate cause of Matthew Lackner's actions described herein and the damages that flow therefrom.
> 55. The City of Pittsburgh's policies, procedures, customs and practices lacked effective procedures to train, monitor or oversee Matthew Lackner's conduct towards Plaintiffs.

(*Id.* ¶¶ 52-55). Based on the allegations in the Amended Complaint, it is difficult for the Court to determine what theory of municipal liability Plaintiffs are alleging. Plaintiffs do not establish a *Monell* claim based on either a policy or custom. Even a liberal reading of Plaintiffs' complaint

compels the conclusion that Plaintiffs failed to adequately set forth sufficient factual allegations to demonstrate a plausible claim for relief under the policy or custom theory of *Monell* liability.[9]  At best, Plaintiffs' Count II contains formulaic recitations of the legal standards under *Monell*.  In a conclusory fashion, Plaintiffs allege that the City's "policies, procedures, customs and practices, or lack thereof, were a direct and proximate cause of Matthew Lackner's actions."  (*Id.* ¶ 54). Count II is speculative and predicated upon sweeping legal conclusions.  Plaintiffs failed to allege facts suggesting that the City, Scirotto, or Schmidt promulgated an official policy or maintained a custom that caused the alleged deprivation of Plaintiffs' constitutional rights.  In sum, Plaintiffs have not specified what custom or policy led to the violation of Plaintiffs' rights as required for this type of *Monell* claim.

Further, Plaintiffs have not plausibly pled that Lackner was a policymaker for purposes of § 1983 *Monell* liability.  A municipality may be liable for the unconstitutional conduct of its employee "when the individual has policy making authority rendering his or her behavior an act of official government policy." *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005).  "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority." *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986). Whether an official had final policymaking authority is a question of state law. *Id.*

> In order to ascertain if an official has final policy-making authority, and can thus bind the municipality by his conduct, a court must determine (1) whether, as a

---

[9] Even if Plaintiffs were proceeding under a policy-based *Monell* theory of liability, this theory is undermined by PBP's BWC policy which states that (1) "Members shall not use BWC equipment unless acting in the performance of their official duties," (2) "Members shall not intentionally obscure the view of their BWC," (3) "[t]he BWC shall not be utilized off-body as a surveillance tool," and (4) Member[s] shall inform all individuals identifiably present as soon as reasonably practical, that their oral/video communications will or have been intercepted and recorded."  (ECF No. 32-1, p. 3).  Plaintiffs allege that Lackner hid BWCs in unmarked patrol vehicles without their knowledge to surreptitiously record their private conversations.  These alleged actions are in direct violation of the above-mentioned provisions of PBP's BWC policies.

matter of state law, the official is responsible for making policy in the *particular area* of municipal business in question . . . and (2) whether the official's authority to make policy in that area is *final and unreviewable*.

*Hill v. Borough of Kutztown*, 455 F.3d 225, 245-46 (3d Cir. 2006).

The United States Court of Appeals for the Third Circuit has previously held that police officers may be municipal policymakers. *See Keenan v. City of Phila.*, 983 F.2d 459, 468–69 (3d Cir. 1992) (holding that a police commissioner was a policymaker for City of Philadelphia); *Black v. Stephens*, 662 F.2d 181, 191 (3d Cir. 1981) (finding that a police chief was a policymaker for City of Allentown). In both cases, however, the Third Circuit determined that the police officer was a policymaker only after examining the officer's responsibilities and decision-making authority with respect to the conduct at issue. *See Andrews v. City of Phila.*, 895 F.2d 1469, 1481 (3d Cir. 1990) (holding that a police commissioner acted as a policy maker when he promulgated and disseminated a police training manual and courses on sexual harassment, and established an Equal Employment Office to handle complaints of discrimination); *Black*, 662 F.2d at 191 (finding that a police chief was a policymaker when he wrote and implemented official policy at issue, was a member of the mayor's cabinet, and established policies and procedures for entire police department).

Plaintiffs have not pled any similar facts. Instead, Plaintiffs alleged that Lackner was the highest-ranking police officer of PBP Zone 2 and that "[a]t all times material hereto . . . Lackner w[as a] policy maker[] for the [PBP]." (ECF No. 21, ¶¶ 23, 47). While the issue of whether Lackner is a policymaker is a legal rather than a factual question, that does not relieve Plaintiffs of the obligation to plead facts supporting their conclusory allegation that Lackner was a policymaker. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 135 n.11 (3d Cir. 2010). This is especially true in a situation where Lackner is alleged to have violated PBP's BWC policy. Given

Plaintiffs' threadbare factual allegations, the Court holds that Plaintiffs did not plausibly plead that Lackner was a policymaker for PBP or the City.

The Court next considers whether Plaintiffs properly alleged a "deliberate indifference" or failure to train theory of *Monell* liability. A municipality's failure to properly train its police officers can amount to a custom that triggers liability under § 1983. *See City of Canton v. Harris*, 489 U.S. 378, 391 (1989). Such liability is reserved for when the failure to train demonstrates a "deliberate indifference" to the constitutional rights of the municipality's citizens. *Id.* at 389. An allegation that a training program is inadequate is insufficient. *Id.* at 390. Instead, Plaintiffs must "identify a failure to provide specific training that has a causal nexus with his or her injuries and . . . demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 144 (3d Cir. 1997). "[D]eliberate indifference may be established when a policymaker has knowledge of a 'pattern of similar constitutional violations by untrained employees' but takes no action to augment or alter the municipality's employee training programs accordingly." *Grandizio v. Smith*, No. CIV. 14-3868, 2015 WL 58403, at *5 (D.N.J. Jan. 5, 2015) (internal citations omitted).

Plaintiffs alleged that the City's "policies, procedures, customs or practices, or lack thereof, were maintained in deliberate indifference to action taken by their subordinates." (ECF No. 21, ¶ 53). Plaintiffs did not identify a specific deficiency in PBP training that had a causal connection with Lackner's actions. Plaintiffs did not plead that the City, Scirotto, or Schmidt knew about past BWC policy violations and took no action to augment PBP's training accordingly. In fact, Plaintiffs did not plead any pattern of similar constitutional violations. Moreover, the facts alleged in Plaintiffs' Amended Complaint undermine any allegation that the City, Scirotto, and Schmidt

acted with deliberate indifference to Lackner's actions. Lackner's actions were reported to a supervisor, Lieutenant Reed, on October 5, 2023. (ECF No. 21-1, p. 10). Lackner was placed on administrative leave, effective immediately, by 1:00 p.m. that day. (*Id.*). Lackner was charged with four felony counts relating to the conduct at issue on February 23, 2024. (ECF No. 21-1). Thus, facts pled by Plaintiffs establish that policymakers within the City acted to address Lackner's actions without delay. City officials did not act with deliberate indifference to Lackner's actions. Plaintiffs' deliberate indifference claims are deficient because Plaintiffs have not identified a failure to provide specific training or identified any shortcomings in any existing training program that caused harm to Plaintiffs. *See Lapella v. City of Atl. City,* No. 10–2454, 2012 WL 2952411, at *8 (D.N.J. July 18, 2012) (finding that a plaintiff did not adequately plead a failure to train claim because the complaint contained only conclusory allegations). For the reasons articulated above, the City, Scirotto, and Schmidt's motion to dismiss Count II of the Amended Complaint is granted with prejudice.[10]

> 4. Qualified Immunity

Lackner argues that he is entitled to qualified immunity because Plaintiffs did not have a reasonable expectation of privacy in their conversations in patrol vehicles, or, if they did, that right was not clearly established. (ECF No. 27, pp. 24-26).[11]

---

[10] The Court will dismiss Count II of the Amended Complaint as asserted against the City, Scirotto, and Schmidt with prejudice because any amendment by Plaintiffs would be futile in the eyes of the Court. Based upon the facts previously pled by Plaintiffs in their first complaint, (ECF No. 1), and the allegations contained in the Amended Complaint (ECF No. 21), there is no possible factual basis sufficient to establish a *Monell* claim against these defendants. Thus, any amendment would once again fail to establish a § 1983 claim with respect to the City, Scirotto, and Schmidt.

[11] Since the Court dismissed Plaintiffs' § 1983 claims against Scirotto and Schmidt on other grounds, the Court does not address Scirotto and Schmidt's qualified immunity arguments.

Qualified immunity shields government officials, including police officers, from liability for civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, the Court must conduct a two-part inquiry, considering (1) whether Lackner violated Plaintiffs' constitutional rights and (2) whether those rights were clearly established. *See El v. City of Pittsburgh*, 975 F.3d 327, 334 (3d Cir. 2020); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (affording courts discretion to decide which step of the qualified immunity analysis to address first). The officer has the burden of establishing his entitlement to qualified immunity. *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021).

Qualified immunity should be upheld on a 12(b)(6) motion "only when the immunity is established on the face of the complaint." *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001). The Third Circuit has cautioned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009). It has likewise held that when a "complaint failed to disclose whether the defendants' actions did not violate a clearly established constitutional right, dismissal on qualified immunity grounds was premature." *Debrew v. Auman*, 354 F. App'x 639, 642 (3d Cir. 2009) (citing *Thomas v. Independence Twp.*, 463 F. 3d 285, 291 (3d Cir. 2006)).

The Court finds a determination of qualified immunity to be inappropriate at the pleading stage. Discovery may cast a new light on the qualified immunity analysis and whether the constitutional right at issue was clearly established. There is no reason at this stage to believe that qualified immunity exists as a matter of law. Thus, the Court will deny Lackner's motion to

dismiss on the grounds of qualified immunity without prejudice to his right to reassert the qualified immunity defense in a motion for summary judgment based on a more fully developed record.

### C. Reasonable Expectation of Privacy (Counts I and II)

Lackner argues that Counts I and II should be dismissed because Plaintiffs did not possess a reasonable expectation of privacy in their conversations occurring while on-duty in PBP vehicles or in Lackner's office.  (ECF No. 27, pp. 22-24).  The Court holds that Plaintiffs adequately pled that they had a reasonable expectation of privacy in their private conversations that occurred in unmarked PBP patrol vehicles during work hours.  Plaintiffs did not plausibly plead that Sedlak had a reasonable expectation of privacy during his conversation in Lackner's office.[12]

Case law interpreting the federal Wiretap Act "overwhelmingly supports the proposition that a plaintiff must have a reasonable expectation of privacy in the intercepted conversation itself."  *Miller v. Kruzik*, No. 3:CV-06-0463, 2009 WL 10718510, at *8 (M.D. Pa. Feb. 23, 2009) (citing *United States v. Dunbar*, 553 F.3d 48, 57 (1st Cir. 2009)); *United States v. Peoples*, 250 F.3d 630, 637 (8th Cir. 2001) ("Before the interception of a conversation can be found to constitute . . . an 'oral communication' under the federal wiretap law, . . . the individuals involved must show they had a reasonable expectation of privacy in that conversation.")).  *Katz v. United States*, 389 U.S. 347 (1967) serves as a guide to define when individuals have a reasonable expectation of privacy in their conversations.  *Id.*  "To determine whether a claimant has a reasonable expectation of privacy, a court must examine whether the claimant exhibited an expectation of privacy in the contents of the communication and whether that expectation is one society is prepared to recognize

---

[12] The section of this analysis addressing Sedlak's reasonable expectation of privacy in his conversation with Lackner, in Lackner's office, pertains solely to Sedlak's WESCA claims in Count I.  As discussed above, Sedlak's federal Wiretap Act claim, also contained in Count I, fails because of the direct party exception.

as reasonable." *Smith v. Unilife Corp.*, 72 F. Supp. 3d 568, 573 (E.D. Pa. 2014). Likewise, WESCA requires a plaintiff to demonstrate that he "possessed an expectation that the communication would not be intercepted" and that "his expectation was justifiable under the circumstances." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 257 (3d Cir. 2010) (citing *Agnew v. Dupler*, 717 A.2d 519, 522 (Pa. 1998)). In sum, both the federal Wiretap Act and WESCA require the plaintiff to prove that he had a reasonable expectation of privacy in the conversation intercepted.

This issue is also relevant to Plaintiffs' § 1983 claims which are based on Fourth Amendment protections from unreasonable searches and seizures. The Fourth Amendment protects individuals from unreasonable governmental intrusions when the individual had a reasonable expectation of privacy. *Carpenter v. United States*, 585 U.S. 296, 304 (2018). Thus, all of Plaintiffs' claims hinge on whether they had a reasonable expectation of privacy in the conversations recorded. Plaintiffs had a subjective expectation of privacy in their conversations. (ECF No. 21, ¶¶ 30-33); (ECF No. 21-1, pp. 5-11). Plaintiffs repeatedly pled that they did not consent to having their conversations recorded, they did not expect to have their conversations recorded, and they would have changed what they discussed had they known that they were being recorded. (*Id.*). Thus, the issue is whether Plaintiffs' expectation of privacy was justified under the circumstances.

"[I]ndividuals do not lose Fourth Amendment rights merely because they work for the government instead of a private employer." *Quon,* 560 U.S. at 756 (internal citations omitted). Instead, a court must consider "'[t]he operational realities of the workplace' in order to determine whether an employee's Fourth Amendment rights are implicated." *Id.* (quoting *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987)). "[T]he question [of] whether an employee has a reasonable

27

expectation of privacy must be addressed on a case-by-case basis." *Id.* Thus, whether a public employee had a reasonable expectation of privacy in the workplace is a fact-specific inquiry.

Here, as alleged, the BWCs Lackner used to create the surreptitious recordings were hidden inside unmarked PBP patrol vehicles. (ECF No. 21-1, p. 5). These vehicles were not equipped with any audio or visual recording equipment. (*Id.*). The plainclothes detectives who used these vehicles did not wear their BWCs on their person during their shift. (*Id.*). Plaintiffs did not know that BWCs were hidden in the vehicles, nor did Plaintiffs consent to having their conversations recorded. (ECF No. 21, ¶¶ 30-31). Plaintiffs were not in an office space, in public, or another common space. They were isolated in an enclosed vehicle. *See Sullinger v. Sullinger*, 849 F. App'x 513, 522 (6th Cir. 2021) ("[E]mployees can have a reasonable expectation of privacy in the workplace where employees take care to ensure that their conversations remained private in a small, relatively isolated shared office.") (internal citations omitted); *Rosario v. United States*, 538 F. Supp. 2d 480, 497 (D.P.R. 2008) (holding that police officers had a reasonable expectation of privacy while in the police station break room); *Richards v. Cnty. of Los Angeles*, 775 F. Supp. 2d 1176, 1183 (C.D. Cal. 2011) (holding that police dispatchers had a reasonable expectation of privacy in their office even when supervisors had access to the office).

The conversations that Lackner allegedly recorded were between police officers – not between police officers and the public. Unlike in *Commonwealth v. Henlen*, 564 A.2d 905, 906-07 (Pa. 1989), which Lackner relied upon in his brief, (ECF No. 27, p. 12), to argue that Plaintiffs did not have a reasonable expectation of privacy, in the instant case the conversations Lackner allegedly recorded were between police officers, not between police officers and the public. Under the alleged circumstances, the Court holds that Plaintiffs have adequately pled that they had a reasonable expectation of privacy in their conversations occurring in unmarked patrol vehicles.

*See United States v. McIntyre*, 582 F.2d 1221, 1224 (9th Cir. 1978) (holding that a police officer who had a microphone and transmitter placed in his briefcase had a reasonable expectation of privacy in his office even when the officer commonly left his door open). Discovery will ultimately reveal whether that expectation of privacy was reasonable.[13]

On the other hand, Plaintiffs pled very little information regarding the recording between Lackner and Sedlak in Lackner's office. Plaintiffs allege that Lackner secretly recorded a conversation between himself and Sedlak, in Lackner's office, using Lackner's hidden BWC. (ECF No. 21-1, p. 19). They contend that Sedlak did not consent to have his conversation recorded, did not expect to have his conversation recorded, and may have changed what he discussed had he known that he was being recorded. (*Id.*). These facts establish that Sedlak had a subjective expectation of privacy. However, these facts do not plausibly allege that Sedlak's expectation of privacy was objectively reasonable. For example, the Court does not know whether Lackner's office was shared, other individuals were around during the conversation, or the office door was open. Plaintiffs failed to plead that Sedlak had a reasonable expectation of privacy during this conversation. Thus, the Court will dismiss, without prejudice, Plaintiffs' WESCA claims asserted against Lackner in Count I as it relates to the conversation between Lackner and Sedlak in Lackner's office on September 27, 2023.

---

[13] Lackner cited a series of cases to support his argument that Plaintiffs did not have a reasonable expectation of privacy in their conversations that occurred in PBP vehicles. (ECF No. 27, pp. 13-16). The Court notes that many of the cases that Lackner cited relate to whether *arrestees* or *criminal suspects* have a reasonable expectation of privacy in a police vehicle. Cases about the expectations of an arrestee or suspect are not analogous to the instant case where the conversations at issue were between police officers.

## IV.    Conclusion

For the forgoing reasons, the Court will dismiss, with prejudice, Counts I and II of Plaintiffs' Amended Complaint as asserted against the City, Scirotto, and Schmidt.  The Court will grant Lackner's motion to dismiss the Count II § 1983 official capacity claims against him with prejudice, and the Count I statutory wiretap claims in relation to the alleged recording that occurred in Lackner's office between Lackner and Sedlak without prejudice.  Lackner's motion will be denied with respect to all other claims.  Orders of Court will follow.


BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE


1|6|25
Dated